MARC J. WINTHROP -- State Bar No. 63218
mwinthrop@winthropcouchot.com
GARRICK A. HOLLANDER -- State Bar No. 166316
ghollander@winthropcouchot.com
KAVITA GUPTA – State Bar No. 138505
kgupta@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Ste 400
Newport Beach, CA 92660
Telephone:  (949) 720-4100
Facsimile:  (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>5TH AVENUE PARTNERS, LLC,<br>a California limited liability company,<br><br>Debtor and Debtor-in-Possession. | Case No. 8:10-bk-18667-ES<br><br>Chapter 11 Proceeding<br><br>**DECLARATION OF STEVEN REBEIL IN SUPPORT OF THE FOLLOWING EMERGENCY MOTIONS:**<br><br>1.   **CASH COLLATERAL**<br>2.   **PAYROLL**<br>3.   **CUSTOMER OBLIGATIONS**<br>4.   **UTILITY**<br>5.   **LIMIT NOTICE**<br><br>DATE:    June 28, 2010<br>TIME:    10:00 a.m.<br>PLACE:   Courtroom 5A<br>         411 W. 4th Street<br>         Santa Ana, CA 92701 |

I, Steven Rebeil, hereby declare as follows:

1. I am the Managing Member of Diegan, LLC, a California limited liability company ("Diegan"). Diagan is the Managing Member of 5th Avenue Partners, LLC, a California limited liability company, dba Sè San Diego Hotel, the debtor and debtor-in-possession in the above Chapter 11 proceeding ("Debtor"), and have been responsible for overseeing the day-to-day operations and financial performance of the Debtor. Consequently, I am involved in supervising all aspects of the Debtor's financial and business affairs since its inception.

2. The facts stated herein are within my personal knowledge, and if called upon to testify to such facts I could and would testify competently thereto.

### General Description of the Debtor

3. The Debtor owns and operates Sè San Diego Hotel, a premier luxury boutique hotel located in downtown San Diego's financial district. The Hotel offers 184 guestrooms, including 37 suites and three penthouse suites, a 5,500-square foot spa, one restaurant, a rooftop bar and lounge, approximately 20,000 square feet of banquet space and meeting rooms, a rooftop outdoor pool, and a fitness center. Within the Hotel structure are 23 unsold condominium units. The Debtor also owns a 31,000 square foot building adjacent to the Hotel ("Entertainment Facility"), which is home to San Diego's House of Blues. In addition to being the landlord of House of Blues San Diego, LLC ("House of Blues"), the Debtor also is a party to a profit participation agreement with House of Blues, whereby they share 50% of all profits generated by House of Blues. The Debtor currently employs approximately 224 persons.

### Events Precipitating the Chapter 11 Filing

4. In February 2006, the Debtor commenced the development of the Hotel. The Debtor entered into a guaranteed maximum price contract with Highland Partnership to build the entire project. By December 2007, the general contactor was significantly over budget. By April 2008, the general contractor had abandoned the project and removed all of their employees and equipment. In May 2008, the Debtor terminated Highland Partnership. The Debtor was able to re-contract with most of the sub contractors to finish the project but this required the company funding nearly 30 million dollars that was the financial responsibility of the general contractor.

Aside from the dramatically increased cost of construction, the Hotel opened for business in late December 2008, nearly a full year later than the original and intended opinion date of December 2008.

5. The opening of the Hotel, nearly one year late, coincided with the financial and economic collapse of the United States economy in the late fall of 2008. The Debtor's ability to meet its original income and expense projections became impacted by the economic downturn. In May 2009, after being open for business for just five months, the Debtor's three year construction loan with the Bank matured and became due in full. Capital markets to re-finance the construction loan became nonexistent in the Spring and Summer of 2009 and remained nonexistent to date.

6. In March 2010, the Bank filed a Notice of Default on the construction loan, some ten months after the loan expired. In early June 2010, nearly one year after the loan expired, the Bank attempted to install a receiver, through an emergency and expedited basis, but was denied by the Court.

7. As evidenced by the foregoing, the Debtor has been forced to spend all of its available resources plus additional capital contributed by its members to complete the project and then fund the negative cash flow of the operating hotel from December, 2008 through June, 2010. The Bank is seeking the appointment of a receiver, which is scheduled to be heard on June 28, 2010 at 1:30 p.m.

**The Debtor's Debt Structure**

8. As of the Petition Date, the Debtor owed approximately $67 million to the Bank, a German banking corporation, acting through its New York branch, as agent for itself and such other co-lenders as may exist. This debt is secured by liens pursuant to a deed of trust recorded against the Debtor's real property, including the Hotel and The Entertainment Facility, as well as a UCC-1 filed on June 22, 2009 against substantially all assets of the Debtor.

9. In addition, Sysco asserts a secured claim in the amount of $22,000 against certain food-related inventory accounts, accounts receivable, and other food-related assets. Don Edward & Company asserts a secured claim in the amount of approximately $82,000 against certain assets, including certain inventory and accounts, among other non-cash collateral assets.

**Cash Collateral**

10. The Budget attached as Exhibit "1" projects the Debtor's cash needs over the next thirteen weeks. This projection was developed by the Debtor's management based upon current operating data and management's best estimate of future cash needs. The operating results detailed in the Budget establish that the Debtor generates positive earnings before interest, taxes, depreciation and amortization ("EBITDA"). Accordingly, the Secured Creditors' cash collateral pool will not be depleted through continued operations. To the contrary, this asset pool will either remain stable or increase through post-petition operations.

11. As illustrated in Exhibit "1," the cash collateral pool in which the Secured Creditors hold an interest will not decline through the usage proposed by the Debtor. To the contrary, the overall value of the estate will increase through this usage, leaving the Secured Creditors' interest adequately protected.

12. The hotel business is very competitive and one of the most important variables that customers weigh when choosing a hotel is the level and quality of service. Unless the Debtor obtains immediate authorization to use Cash Collateral to pay all ordinary and necessary obligations, the operations of the Hotel will be adversely impacted. If use of cash collateral is not granted immediately, operations will be interrupted and occupancy levels will almost certainly decline, reducing the value of the estate's assets and impairing the rights of creditors. In contrast, if immediate relief is granted as prayed herein, asset values will be preserved. Under these circumstances, granting relief on an emergency basis is both necessary and appropriate.

13. The Debtor is seeking relief on an emergency basis, again, due to the nature of its business and the cash intensive nature of its business. The Hotel collects substantial revenues on a daily basis. However, it must also expend these collections to sustain its business. Immediate relief is needed or the Hotel will run out of cash for operations.

**Payroll**

14. The Hotel is managed by Sè San Diego pursuant to the Management Contract. Sè San Diego employs approximately 224 employees to provide operate the Hotel and provide critical guest services.

15.   The payroll component of the fee payable to Sè San Diego under the Management Contract is approximately $432,000 per month. This component is comprised of the wage and benefit obligations, and union health and benefit obligations, payable to the Hotel staff. The Debtor estimates that the prepetition "stub" period obligations owed to the staff will total approximately $77,000. Payroll for June 20, 2010 to June 24, 2010 will be paid on July 2, 2010.

16.   **The pre-petition compensation amounts includes compensation to one insider in these cases, but no payments will be made to the insider until such time as the Debtor's post-petition compensation is authorized to be paid pursuant to the U.S. Trustee Guidelines.**

17.   The Debtor also seek to reimburse five employees, including Mr. Thomas N. Benjamin, the Debtor's President, an aggregate of not more than $3,000 for ordinary course prepetition business expenses that they incurred and paid in connection with the Debtor's business operations.

18.   I am generally familiar with the employee census maintained by Sè San Diego. All of the employees who will receive prepetition wage payments will fall below the $10,950 per employee priority limit in the bankruptcy code.

19.   Any disruption in the payments to the onsite staff would have an immediate and adverse impact upon the operations of the Hotel. Staff defections would occur, moral would decline and the quality of service at the Hotel could suffer. Accordingly, obtaining court authorization to pay the prepetition wage obligations owed under the Management Contract is critically important to the Debtor and the creditors.

20.   In order to preserve and maintain its ongoing business operations, and to meet the needs of its customers, the Debtor must retain the support of its employees. To retain this support, the Debtor must timely pay all prepetition payroll and wage related obligations owed to this constituency.

21.   I believe that employees will leave if they are not paid, which will cause immediate and irreparable damage to the Debtor's business. In contrast, if the Debtor can promptly obtain the relief sought herein, its business value will be preserved for the benefit of all creditors.

### The Debtor's Customer Obligations

22.     The Debtor has sold or otherwise distributed promotional specials, discounts and gift certificates for use at its hotel, restaurant and shops ("Customer Obligations"). In addition, the Debtor offers banquet, catering and group hotel services, for which it requires a deposit, with the balance due on the date of the banquet, catering or group hotel services. While the outstanding promotional specials, discounts, and gift certificates, if any, are unknown and cannot be readily ascertainable, the Debtor estimates that the deposits for banquets, catering and group hotel services total approximately $319,000.

23.     Should the Debtor be forced to cease honoring these Customer Obligations, the Debtor's customers may likely not stay at or return to the Hotel. Moreover, failure to honor these obligations would impede upon the Debtor's efforts to remain competitive with other hotels, and undoubtedly engender negative publicity, which would damage sales and the Debtor's efforts to repay creditors. Consequently, fulfilling these Customer Obligations are an important part of preserving customer confidence and support. Any disruption in the Debtor's ability to honor these Customer Obligations may result in a loss of business to the hotel, and a resulting loss of income to the Debtor.

24.     The Debtor seek the instant relief on an emergency basis, such that the restaurants may continue honoring the customer obligations immediately following the Petition Date, so that the Debtor's transition into Chapter 11 is seamless and unnoticeable to the Debtor's customers.

25.     Should the Debtor be unable to honor the Customer Obligations, it will lose customer confidence and support, and therefore lose revenues, which could significantly affect the Debtor's ability to reorganize. The Debtor cannot, at this stage of its restructuring, weather a decline in revenue, which would surely result from a dishonoring reward certificates, banquet and catering deposits, and specials. The Debtor must continue to conduct business as usual for its customers, which requires that the Debtor be able to honor the Customer Obligations.

### Utilities

26.     In the ordinary course of business, the Debtor uses gas, water, electric, telecommunications and other services provided by various utility companies (collectively, the

"Utility Providers"). The continued and uninterrupted utility service is essential to the Debtor's ability to sustain its operations during its Chapter 11 case. Any interruption of utility service would severely disrupt the Debtor's business operations. Prior to the Petition Date, the Debtor generally paid the Utility Providers' bills consistently and on a regular basis. The Debtor estimates that its average monthly payments to its Utility Providers is approximately $67,000.

27.   To continue day-to-day operations in the most cost-effective manner, the Debtor must ensure that there is no interruption of utility services. Since the Debtor cannot continue its business operations without utility services, it is critical that the Debtor obtains emergency authorization for the relief requested herein and further relief as is just and appropriate under the circumstances in this case.

**Limit Notice**

28.   The Debtor has more than 475 creditors in this case. It is my understanding that some of the motions and applications that may be filed in the Debtor's case will involve matters that ordinarily fall within the parameters of notices required to be given to all creditors and equity security holders in the Debtor's case, but which will not affect directly, or impact the interests of, a majority of creditors. Providing notice to all such parties would be overly burdensome and costly to the estate.

29.   I believe that limiting notice to the U.S. Trustee, the secured and twenty largest unsecured creditors and to all parties who request special notice in the Debtor's Chapter 11 case would provide adequate and proper notice to affected creditors and to other interested parties. Additionally, the Debtor will provide notice to any party whose interest is impacted directly by a particular action or proceeding filed by the Debtor.

30.   I believe that adoption of this proposed notice procedure is necessary and appropriate. Such notice procedure will relieve the Debtor of the significant administrative burdens that would be associated with periodic "mass mailings," and would reduce substantially the Debtor's postage and reproduction costs, thereby facilitating significantly the economical and

//

1  efficient administration of the Debtor's case.
2      I declare under penalty of perjury that the foregoing is true and correct.
3  Executed this 25th day of June 2010, at Newport Beach, California.

                                      _____
                                      Steven Rebeil

**EXHIBIT "1"**

Se' San Diego Hotel
13 WK FORECAST 06/24/2010

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | |
| Rooms | 221,892 | 142,194 | 217,881 | 239,385 | 284,143 | 168,417 | 174,328 | 203,891 | 170,803 | 158,422 | 222,812 | 128,024 | 137,706 | 2,369,898 |
| Food & Beverage | 125,930 | 119,037 | 119,037 | 119,037 | 119,037 | 133,166 | 143,763 | 143,763 | 143,763 | 140,680 | 118,240 | 118,240 | 118,240 | 1,661,935 |
| Spa | 18,807 | 17,963 | 17,963 | 17,963 | 17,963 | 17,933 | 17,910 | 17,910 | 17,910 | 17,860 | 16,996 | 16,996 | 16,996 | 231,168 |
| Telephone | 2,911 | 1,768 | 1,768 | 1,768 | 1,768 | 1,742 | 1,723 | 1,723 | 1,723 | 1,684 | 1,405 | 1,405 | 1,405 | 21,895 |
| Retail | 198 | 174 | 174 | 174 | 174 | 171 | 169 | 169 | 169 | 166 | 138 | 138 | 138 | 2,154 |
| Other Income | 37,101 | 23,827 | 43,827 | 48,312 | 23,827 | 23,480 | 23,220 | 23,220 | 47,705 | 22,864 | 20,062 | 44,546 | 23,062 | 402,055 |
| **Total Revenue** | 405,940 | 304,963 | 400,650 | 426,639 | 446,912 | 344,911 | 361,115 | 390,677 | 382,074 | 341,677 | 279,653 | 319,031 | 284,865 | 4,689,106 |
| **Expenses** | | | | | | | | | | | | | | |
| | 162,476 | 122,060 | 160,359 | 170,761 | 178,875 | 138,049 | 144,535 | 156,367 | 152,924 | 136,755 | 111,930 | 127,691 | 114,016 | 1,876,800 |
| Employee Background Checks & Recruiting | 705 | 530 | 659 | 696 | 773 | 598 | 626 | 676 | 620 | 592 | 486 | 495 | 511 | 7,968 |
| Equipment Leases | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 49,400 |
| Food & Beverage | 73,999 | 55,592 | 69,195 | 73,060 | 81,103 | 62,765 | 65,671 | 70,984 | 65,038 | 62,170 | 50,952 | 51,889 | 53,629 | 836,046 |
| Franchise Tax Board - LLC Estimated Tax | | | | 24,280 | | | | | | | | | | 24,280 |
| Other A&G - Office Expenses/Permits/Licenses | 10,874 | 8,901 | 10,359 | 10,773 | 11,635 | 9,670 | 9,981 | 10,551 | 9,913 | 9,606 | 8,404 | 8,504 | 8,690 | 127,862 |
| Parking/Cost of Goods of Other Income | 18,461 | 13,906 | 17,272 | 18,228 | 20,219 | 15,680 | 16,400 | 17,715 | 16,243 | 15,513 | 12,757 | 12,989 | 13,419 | 208,821 |
| Property Operations and Maintenance | 12,121 | 9,106 | 11,334 | 11,967 | 13,285 | 10,281 | 10,757 | 11,627 | 10,654 | 10,183 | 8,346 | 8,500 | 8,785 | 136,946 |
| Rooms | 34,320 | 25,783 | 32,092 | 33,884 | 37,615 | 29,110 | 30,457 | 32,922 | 30,163 | 28,834 | 23,630 | 24,065 | 24,872 | 387,746 |
| Sales & Marketing | 15,908 | 11,951 | 14,875 | 15,706 | 17,435 | 13,493 | 14,118 | 15,260 | 13,982 | 13,365 | 10,953 | 11,155 | 11,529 | 179,730 |
| Sales Tax - Arrearage Payment Plan | | | | 9,500 | | | | 9,500 | | | | 9,500 | | 28,500 |
| Telephone | 1,538 | 1,156 | 1,438 | 1,519 | 1,686 | 1,305 | 1,365 | 1,475 | 1,352 | 1,292 | 1,055 | 1,079 | 1,115 | 17,378 |
| Trash Removal | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 5,850 |
| Utilities | 21,927 | 16,473 | 20,504 | 21,649 | 24,033 | 18,598 | 19,460 | 21,034 | 19,272 | 18,422 | 15,098 | 15,376 | 15,891 | 247,737 |
| Work Comp & Insurance | 21,788 | 16,369 | 20,374 | 21,512 | 23,880 | 18,481 | 19,337 | 20,901 | 19,150 | 18,306 | 15,002 | 15,278 | 15,791 | 246,169 |
| **Total Expenses** | 215,891 | 164,018 | 202,353 | 247,024 | 235,914 | 184,230 | 192,422 | 216,895 | 190,636 | 182,554 | 150,938 | 163,078 | 158,482 | 2,504,434 |
| **Restructuring Expenses** | | | | | | | | | | | | | | |
| Debtors Professional Fee | 1,950 | 1,625 | 1,625 | 1,625 | 1,950 | 1,625 | 1,625 | 1,950 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 22,100 |
| Committee Professional Fee | - | - | - | - | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 90,000 |
| **Beginning Balance** | 65,899 | 91,522 | 108,782 | 145,096 | 152,324 | 172,498 | 183,504 | 196,036 | 201,501 | 228,390 | 239,132 | 244,292 | 240,438 | 65,899 |
| **Net Income** | 25,623 | 17,260 | 36,314 | 7,229 | 20,173 | 11,006 | 12,533 | 5,464 | 26,889 | 10,743 | 5,160 | (3,854) | 21,233 | 195,772 |
| **Ending Balance** | 91,522 | 108,782 | 145,096 | 152,324 | 172,498 | 183,504 | 196,036 | 201,501 | 228,390 | 239,132 | 244,292 | 240,438 | 261,671 | 261,671 |

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

The foregoing document described as DECLARATION OF STEVEN REBEIL IN SUPPORT OF THE FOLLOWING EMERGENCY MOTIONS: 1. CASH COLLATERAL; 2. PAYROLL; 3.CUSTOMER OBLIGATIONS; 4. UTILITY; and 5. LIMIT NOTICE PROCEDURE will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 25, 2010 checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- United States Trustee (SA)   ustpregion16.sa.ecf@usdoj.gov
- Dennis J Wickham   wickham@scmv.com
- Marc J Winthrop   mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On June 25, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 25, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 25, 2010 | Susan Connor | *[signature]* |
|---|---|---|
| Date | Typed name | Signature |

## SERVICE VIA OVERNIGHT
(Secured parties and 20 largest without e-mail addresses)

| | | |
|---|---|---|
| WestLB AG<br>Attn: Corporate Officer<br>1211 Avenue of the Americas<br>New York, NY 10036 | Life Fitness<br>Attn: Corporate Officer<br>5100 N. River Road<br>Schiller Park, IL 60176 | The CIT Grp/Equip Finan Inc.<br>Attn: Corporate Officer<br>10201 Centurion Pkwy N<br>Jacksonville, FL 33256 |
| Sysco San Diego, Inc.<br>Attn: Corporate Officer<br>12180 Kirkham Rd.<br>Poway, CA 92064 | NEC Financial Services, LLC<br>Attn: Managing Member<br>1 Park 80 West<br>Saddle Brook, NJ 07663 | Dynalectric Company<br>Attn: Corporate Officer<br>9505 Chesapeake Drive<br>San Diego, CA 92123 |
| Edward Don & Company<br>Attn: Corporate Officer<br>84 Stemmers Lane<br>Westampton, NJ 08060 | Leasing Assoc of Barrington, Inc.<br>Attn: Corporate Officer<br>33 W. Higgins Rd., #1030<br>South Barrington, IL 60010 | Westye Group, dba Sub Zero Wolf<br>Attn: Corporate Officer<br>PO Box 100683<br>Pasadena, CA 91189 |
| GNS Management<br>Attn: Corporate Officer<br>3410 Main St.<br>San Diego, CA 92113 | ACE Parking<br>Attn: Corporate Officer<br>645 Ash Street<br>San Diego, CA 92101 | San Diego Gas & Electric<br>Attn: Corporate Officer<br>8326 Century Park Court<br>San Diego, CA 92123 |

Via electronic transmission
Counsel to secured lender and balance of 20 largest

| | |
|---|---|
| Michael Hauser, Esq.<br>US Trustee's Office | Michael.hauser@usdoj.gov |
| Michael C. Rupe, Esq.<br>King & Spadling LLP 1185 Avenue of the Americas<br>New York, NY 10036 | mrupe@kslaw.com<br><br>Counsel to secured lender |
| Manatt Phelps & Phillips<br>Attn: Corporate Officer<br>695 Towne Ctr Dr., 14th Fl.<br>Costa Mesa, CA 92626 | kosaki@manatt.com |
| Raymond - San Diego<br>Attn: Corporate Officer<br>520 W. Walnut Avenue<br>Orange, CA 92868 | mikep@raymond-co.com |

| | |
|---|---|
| California Comfort Sys USA<br>Attn: Corporate Officer<br>9750 Distribution Ave.<br>San Diego, CA 92121 | slira@calcsusa.com |
| Jeffrey Trott Industries<br>Attn: Corporate Officer<br>1934 N. Enterprise Street<br>Orange, CA 92865 | jtrott@jtimillwork.com |
| Rockwell Group<br>Attn: Corporate Officer<br>5 Union Square West<br>New York, NY 10003 | ACastro@rockwellgroup.com |
| RW Smith<br>Attn: Corporate Officer<br>8555 Miralani Dr.<br>San Diego, CA 92126 | rreed@rwsmithco.com |
| Gabbard Hardware<br>Attn: Corporate Officer<br>13200 Kirkham Way, #102<br>Poway, CA 92064 | diana@gabbardhardware.com |
| Buxcon Sheet Metal Inc.<br>Attn: Corporate Officer<br>11222 Woodside Ave N.<br>Santee, CA 92071 | Judy@SpecialtyMetalsFab.com |
| Division 8<br>Attn: Corporate Officer<br>7850 North Avenue<br>Lemon Grove, CA 91945 | rob@division8Inc.com |
| ISEC<br>Attn: Corporate Officer<br>3888 Calle Fortunada<br>San Diego, CA 92123 | MDBoggess@isecinc.com |
| Marsh Risk & Insurance Serv<br>Attn: Corporate Officer<br>4695 MacArthur Court, #700<br>Newport Beach, CA 92660 | Craig.M.Morris@marsh.com |

| | |
|---|---|
| MJA Advertising<br>Attn: Corporate Officer<br>9440 Santa Monica Blvd.<br>Beverly Hills, CA 90210 | scooper@mjala.com |
| Navigant Consulting<br>Attn: Corporate Officer<br>8105 Irvine Center Dr., #870<br>Irvine, CA 92618 | AHicks@NavigantConsulting.com |
| Wirtz Tile & Stone<br>Attn: Corporate Officer<br>7932 Armour Street<br>San Diego, CA 92111 | jwirtz@wirtzquality.com |